**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ITEX, INC.**, a Colorado corporation; | ) | |
| and **MF&H TEXTILES, INC.**, | ) | |
| a Georgia Corporation, | ) | |
| | ) | Case Number 08 C 1224 |
| Plaintiffs, | ) | |
| | ) | Judge Wayne R. Andersen |
| -vs- | ) | |
| | ) | Magistrate Judge Morton Denlow |
| **WORKRITE UNIFORM COMPANY,** | ) | |
| **INC.**, a California corporation, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## WESTEX'S BRIEF IN SUPPORT OF STAY

Westex submits this brief in support of its motion for a stay of this action as to all

Defendants in the Westex "chain-of-commerce" -- that is, its customers (Workrite; Bulwark;

Cintas; Unifirst; G&K Services; and Aramark), and its supplier (Greenwood Mills).[1]

This action should be stayed for the same reasons that this Court denied the Plaintiffs'

request to amend their complaint in the First Action (05 C 6110) to include these same

Defendants:

- • Westex is the lead Defendant in the First Action, which was brought by these *same* Plaintiffs, for alleged infringement of the *same* patent, and which has been pending since October 2005;

- • The parties named as Defendants in this case (the "Second Action") are all customers or suppliers of Westex, whose alleged infringement is *dependent* upon the outcome of the First Action: namely, whether or not the products manufactured by Westex infringe the patent-in-suit;

---

[1]    At the April 24, 2008 hearing on Mount Vernon Mills' motion for a stay of this action, this Court took notice that Westex and the Plaintiffs were in discussions as to the terms of a possible agreed stay for the Westex-related parties. (04/28/08 Hrg. Tr. at 6). Pending an agreement, this Court recognized Westex's oral motion for a stay. (*Id*). As of the filing date of this brief, Westex had not received confirmation from the Plaintiffs as to an agreed stay, and so Westex submits this brief to state its position.

- Discovery is moving forward promptly in the First Action, such that a partially or wholly dispositive decision in that case will arrive far sooner than in this case, and without the possibility of contrary results that might occur if this case were allowed to proceed; and

- As this Court has consistently indicated, it is "strongly" preferable to determine the patent validity and infringement issues here without subjecting customers and other "innocent third parties" to the costs and demands of litigation if it is not necessary to do so.  (04/24/08 Hrg. Tr. at 7).[2]

Accordingly, Westex supports the motion filed by Mount Vernon Mills to stay this case in its entirety until after disposition of the First Action.  But even if this case were not stayed as to all parties, these principles of judicial economy and fairness demonstrate that the case should, at a minimum, be stayed as to Westex and the parties in its chain-of-commerce (Workrite; Bulwark; Cintas; Unifirst; G&K Services; Aramark; and Greenwood Mills).

## I.    BACKGROUND

Westex and its related companies (Western Piece Dyers and Finishers, and King America Finishing) manufacture and market flame-retardant fabrics.  These fabrics are used in protective garments for occupations such as firefighting, the petrochemical industry, and by emergency medical services personnel.

Westex manufactures its flame-retardant fabrics according to the production process set forth in U.S. Patent 4,909,805 (the "'805 Patent"), issued in 1990, for which Westex is a licensee.  The '805 Patent discloses a two-step process in which certain fabrics are saturated with phosphorous and other chemicals to obtain flame-retardant properties.

On October 21, 2005, Itex and MF&H filed the First Action against Westex, alleging that Westex's manufacturing process infringes a later patent, U.S. Patent 5,468,545 (the "'545

---

[2]    A true and correct copy of the transcript of the April 24, 2008 hearing is attached as Exhibit A.

Patent"), issued in 1995 and held by Itex and MF&H.[3]  The '545 Patent discloses a one-step

process for treating certain fabrics to obtain flame-retardancy.

## II.      PROCEDURAL POSTURE

### A.      The Proposed Amendment in First Action

On November 2, 2007, Itex and MF&H moved to amend their complaint in the First

Action, to add a number of Westex's customers and suppliers as co-Defendants.  The proposed

amendment sought to add as Defendants all of the parties identified above as having business

relationships with Westex: its customers (Workrite; Bulwark; Cintas; Unifirst; G&K Services;

and Aramark), and its supplier (Greenwood Mills).  (*See* 11/02/07 Motion for Leave to File

Second Amended Complaint) [Docket No. 57].  The claims Itex and MF&H sought to assert

against those parties were, like the claim against Westex, claims of alleged infringement of the

'545 Patent.  (*Id*).

Westex objected to the proposed amendment on several grounds, including:

- •        The claims against Westex's customers and suppliers were by definition dependent upon a determination of whether or not *Westex* infringed the '545 Patent, and so the claims against *Westex* should be adjudicated first;

- •        Given that the case against Westex had been pending since 2005 -- including a stay granted at the request of Itex and MF&H while they pursued a re-examination of the '545 Patent in the U.S. Patent Office -- adding a number of new parties at this stage of the lawsuit would unduly delay its disposition;

- •        Seeking to add claims against Westex's customers and suppliers was, at bottom, an improper attempt to pressure Westex into settlement.

(11/30/07 Opposition to Motion for Leave to File Second Amended Complaint) [Docket No. 65].

---

[3]      On September 27, 2007, Itex and MF&H were granted leave to amend their complaint in the First Action to add Westex's related companies as co-Defendants.

On January 31, 2008, this Court denied the motion for leave to amend.  (*See* 01/31/08

Transcript at 9).[4]  In so doing, this Court specifically addressed the possibility that Itex and

MF&H might file their claims against Westex's customers and suppliers in a separate lawsuit:

> ***So if I deny the motion to amend and the new lawsuits are filed and I find them related -- which, based on my principles, if they were pending here, I would*** …
> if I do that, I could still move forward [with the First Action] without awaiting all discovery on those other cases to resolve [the First Action].
>
> * * *
>
> And here is what I am going to do: I am going to deny the motion to file an amended complaint.  ***If new complaints are filed in this District, as counsel predicts, almost surely I will find them related.  That will give me the procedural option of handling them separately***.

(*Id*. at 5, 8-9) (emphasis added).

This Court also anticipated the delays that would follow if a separate action were filed,

and indicated that Westex should not be further impeded in its pursuit of a resolution to the First

Action:

> If the defendant [Westex] is honorably stepping to the plate and getting the plaintiff information [in discovery] because you think you have a good case and you have a good chance to win, ***I do not think, having been in this for two and a half years … that you should be slowed down, which you inevitably would be, if other defendants were added***.

(01/31/08 Hrg. Tr. at 9) (emphasis added).

## B.    Progress of the First Action

Since the January 31st hearing, discovery has indeed moved forward promptly in the First

Action.  The parties have propounded and responded to several sets of written discovery

(document production, interrogatories, and requests for admission), in addition to the written and

---

[4]    A true and correct copy of the transcript of the January 31, 2008 hearing is attached as
Exhibit B.

deposition discovery they previously completed.  Specifically, the following discovery has been taken in the First Action:

- Westex has answered two sets of Interrogatories;

- Westex has responded to three sets of Document Requests;

- Westex has answered three sets of Requests for Admission, plus amendments to those answers;

- Westex has produced three of its principals for deposition;

- Westex has opened its manufacturing facility to inspection, as well as the videotaping of its manufacturing operations;

- Westex has produced several years' worth of manufactured fabric products to be sampled and tested;

- Itex and MF&H have answered two sets of Interrogatories, plus supplements and amendments to those answers; and

- Itex and MF&H have responded to one set of Document Requests, with responses due to a second set.

Westex has also repeatedly sought the agreement of Itex and MF&H to an aggressive case management schedule, including a *Markman* hearing.  Indeed, under the original proposed schedule -- which Westex prepared and provided to Itex and MF&H on February 6, 2008 -- the parties would already have commenced briefing the claim construction issues to be determined at that hearing.  However, Itex and MF&H have not responded to Westex's proposals or offered any scheduling plan of their own.

### C.     The Second Action

On February 28, 2008, Itex and MF&H did indeed file the Second Action, which this Court found to be related to the First Action.  (*See* 04/03/08 Minute Order) [Docket No. 76].  The Second Action is identical to the proposed amended complaint that Itex and MF&H were denied leave to file in the First Action, but for the addition of two more Defendants (Mount Vernon Mills and Carhartt) who do not have commercial ties to Westex.

The complaint in the Second Action alleges infringement of the same patent at issue in the First Action (the '545 Patent). As to the parties in the Westex chain-of-commerce, the alleged infringement in the Second Action rests upon the same factual and legal basis at issue in the First Action: the supply or use of allegedly infringing fabric manufactured by Westex.

As to the other two parties (Mount Vernon Mills and Carhartt), the alleged infringement in the Second Action rests upon factual and legal bases that may differ from those of the First Action, depending upon the manufacturing process used by, and other defenses available to, those parties.

No party has filed an Answer to the Second Action. No discovery or other proceedings have taken place in the Second Action. Instead, Mount Vernon Mills , Westex and other Defendants immediately moved to stay the Second Action until after disposition of the First Action.

For all of these reasons, it is plainly inaccurate (and disingenuous) for Itex and MF&H to assert that the First Action "is not that much closer to trial readiness than [the Second Action]." (Pl. Opp. to Stay at 3). The First Action is well along with discovery, and -- despite Plaintiffs' intransigence -- it is approaching a *Markman* hearing. The Second Action, on the other hand, has not even begun.

III.    THE SECOND ACTION SHOULD BE STAYED UNTIL AFTER DISPOSITION OF THE FIRST ACTION

Under the well-established ""customer suit" doctrine, as well as the principles of judicial economy, patent infringement claims against a manufacturer such as Westex should proceed alone in the first instance, with any ancillary claims against the manufacturer's customers (or other parties in the manufacturer's chain-of-commerce) either dismissed or stayed pending the outcome of the case against the manufacturer. Indeed, if Westex prevails in the First Action,

either on the basis of patent invalidity or non-infringement, there will be no need to proceed with

the Second Action at all.

Likewise, because the First Action is significantly farther along in its progress than the

Second Action, it is likely that the First Action will promptly yield a dispositive decision, and

avoid the possibility of delay or conflicting results that could occur if the Second Action were

not stayed.

### A.      Claims Against the Manufacturer Should Be Decided First

The Federal Circuit has long recognized the "customer suit" doctrine in patent

infringement cases, under which "litigation against … the manufacturer of [allegedly] infringing

goods takes precedence over a suit by the patent owner against customers of the manufacturer."

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  This is because:

> ***In reality, the manufacturer is the true defendant in the customer suit*** ... it is a
> simple fact of life that a manufacturer must protect its customers, either as a
> matter of contract, or good business, or in order to avoid the damaging impact of
> an adverse ruling against its products.

*Id*. (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1976), *cert.*

*denied*, 434 U.S. 860, 98 S. Ct. 185 (1977) (emphasis added)).

Additionally, because a patent owner's claims against the manufacturer's customers are

entirely dependent upon a finding that the manufacturer is producing infringing goods, resolution

of issues such as "patent infringement" and "patent validity" raised by the manufacturer will

necessarily "resolve these issues as to their customers" and other companies in the

manufacturer's chain-of-commerce, such as its suppliers.  *Katz*, 909 F.2d at 1464.  This

"customer suit" doctrine therefore provides that claims against parties with commercial ties to a

manufacturer should be dismissed or stayed pending the outcome of the claims against the

manufacturer.  *Id*. (severing and staying claims against manufacturer's customers); *accord*, *Tri-*

*Tronics Co. v. MacGregor & Co.*, 1990 U.S. Dist. Lexis 9141, \*9-10 (N.D. Ill. 1990) (dismissing claims against distributor and customer "pending resolution of the principal dispute between the patent owner and the allegedly infringing manufacturer").  That is:

> Plaintiff's action is premised on the allegation that the [goods] sold by defendant were manufactured in violation of plaintiff's patent rights.  [Defendant's customer] was merely the re-seller of the goods initially produced by [defendant], and a resolution in favor of [defendant] … would release defendants of liability here.  In other words, this case appears to fit the classic mold of the customer suit….

*Whelen Tech., Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715, 716 (N.D. Ill. 1990) (severing and staying claims against defendant's customers and distributors); *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185-86, 72 S. Ct. 219, 222 (1952) (noting manufacturer's interest in preventing "harassment of his customers").

This is precisely the case here.  Westex -- the Defendant in the First Action -- is the party that manufactures allegedly infringing fabrics.  ***None*** of its customers or suppliers named as Defendants in the Second Action manufactures allegedly infringing fabrics.  The ***only*** allegation against those parties is that they either: (a) supply the fabric that Westex uses its in manufacturing process; or (b) purchase the processed fabric from Westex.  As such, any claims against those parties are derivative of, and entirely dependent upon, the claim against Westex in the First Action.

Under these circumstances, the case law is clear that the Second Action should be stayed until after the First Action is decided.  *See Katz*, 909 F.2d at 1464 (claims against customers severed and stayed; "[a]lthough there may be additional issues involving the [customers], their prosecution will be advanced if [plaintiff] is successful on the major premises being litigated [against the manufacturer], and may well be mooted if [plaintiff] is unsuccessful"); *accord*, *Whelen*, 741 F. Supp. at 716; *Tri-Tonics*, 1990 U.S. Dist. Lexis 9141 at \*10-11.

- 8 -

**B.      Judicial Economy Would Be Served by Staying the Second Action**

The First Action has been pending since 2005 -- including a protracted stay, requested by

Itex and MF&H, to accommodate re-examination of the '545 Patent.  As this Court observed

back in January, "having been in this for two and a half years," it would not be equitable for

Westex "to be slowed down, which [Westex] inevitably would be," if these proceedings

expanded to include the claims in the Second Action.  (01/31/08 Hrg. Tr. at 9).  To the contrary,

this Court noted that if Westex "is honorably stepping to the plate and getting the plaintiff

information [in discovery] because you think you have a good case and you have a good chance

to win," the best course would be to allow Westex to do so and proceed quickly to judgment in

the First Action.  (*Id*).

There can be no question that Westex has indeed stepped to the plate in the First Action.

As set forth above, Westex has moved quickly to push discovery forward, for the purpose of

obtaining a dispositive ruling as soon as possible in that case.

As a result, it is likely that a stay of the Second Action need not last for any extended

period of time.  But a stay would greatly serve judicial economy, and conserve the resources of

the parties, because:

- It would permit the Court and the parties to focus their attention and efforts on the First Action, which is the most direct route to either a dispositive ruling that eliminates the Second Action in its entirety or significantly narrows the issues to be contested in the Second Action;

- It would prevent Westex's customers and suppliers -- in essence, innocent third parties -- from having to participate in the litigation until and unless it becomes necessary for them to do so; and

- It would prevent the delays, and possibly conflicting results, that might occur if both cases moved forward simultaneously.

Managing the two cases in this fashion would permit the First Action -- the one that

Westex already has had to wait years to resolve, and the one which, if not dispositive of the

- 9 -

Second Action, will at least greatly narrow its scope -- to be completed first, which is the most

efficient and fairest result.  *See, e.g., Walker v. Merck & Co.*, 2005 U.S. Dist. Lexis 13693, *6

(S.D. Ill. 2005) ("judicial economy weighs in favor of granting a stay").

**IV.    CONCLUSION**

The long-established "customer suit" doctrine, the prior rulings of this Court, and the

principles of judicial economy and fairness demonstrate conclusively that the Second Action

should be stayed in its entirety until the First Action is decided.  However, if the Second Action

were not stayed as to all parties, it should, at a minimum, be stayed as to Westex and the parties

in its chain-of-commerce (Workrite; Bulwark; Cintas; Unifirst; G&K Services; Aramark; and

Greenwood Mills).

Respectfully submitted,

WESTEX INC.


By:    <u>s/ Christopher E. Paetsch</u>
One of Its Attorneys


Alan L. Unikel
Christopher E. Paetsch
SEYFARTH SHAW LLP
131 South Dearborn
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

Dated: May 23, 2008

20216213

- 10 -

## CERTIFICATE OF SERVICE

I, Christopher E. Paetsch, an attorney, certify that I served the attached **WESTEX'S BRIEF IN SUPPORT OF STAY** via the court's electronic filing system on May 23, 2008, upon the following counsel of record:

Richard L. Mikesell
14827 Ventura Boulevard
Suite 216
Sherman Oaks, California 91403
Fax: (818) 377-2588 (Via Fax and Mail only)

Mark W. Hetzler
Jeffrey Chelstom
FITCH EVEN TABIN & FLANNERY
120 South LaSalle Street
Suite 1600
Chicago, Illinois 60603

Joel R. Merkin
SONNENSCHEIN, NATH & ROSENTHAL, LLP
233 S. Wacker Drive
Chicago, IL 60606

Mark Nicholas Senak
SENAK & SMITH, LTD.
200 W. Adams St., Suite 1015
Chicago, IL 60606

David Andrew Johnson
SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, IL 60601

Christopher V. Carani
MCANDREWS, HELD & MALLOY, P.C.
500 W. Madison St., Suite 3400
Chicago, IL 60661

John A. Artz
DICKINSON WRIGHT, PLLC
38525 Woodward Avenue, Suite 2000
Bloomfield Hills, MI  48304

s/ Christopher E. Paetsch
Christopher E. Paetsch